**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Newport News Division**



FILED

AUG 3 1 2022

CLERK, U.S. DISTRICT COURT
NORFOLK, VA

**BRYAN LAMAR BROWN,**

        **Petitioner,**

v.

                             **CRIMINAL ACTION NO. 4:17-cr-45(03)
CIVIL ACTION NO. 4:21-cv-153**

**UNITED STATES OF AMERICA,**

        **Respondent.**

### *MEMORANDUM OPINION AND ORDER*

Before the Court is Bryan Lamar Brown's ("Petitioner") Motion to Vacate, Set Aside, or Correct a Sentence pursuant to 28 U.S.C. § 2255. Pet'r's Mot. Vacate, ECF No. 265 ("Pet'r's Mot."); Pet'r's Mem. Supp. Mot. Vacate, ECF No. 276 ("Mem. Supp."). The Government opposed the Motion and Petitioner replied. Resp't's Mem. Opp'n to Pet'r's Mot. Vacate, ECF No. 292 ("Mem. Opp'n"); Pet'r's Reply to Resp't's Mem. Opp'n to Pet'r's Mot. Vacate, ECF No. 296 ("Pet'r's Reply"). The matter is now ripe for judicial determination. Having reviewed the Motion and relevant filings, the Court finds that a hearing is not necessary. *See* 28 U.S.C. § 2255(b) (A court shall grant a prompt hearing "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief.").[1] For the reasons set forth below, Petitioner's Motion is **DENIED**.

### I.    FACTUAL AND PROCEDURAL HISTORY

On April 12, 2017, Petitioner and two co-defendants were named in a one-count Indictment. Indictment, ECF No. 7. On October 16, 2017, Petitioner and three co-defendants were

---

[1] Petitioner's request for an evidentiary hearing is therefore **DENIED**. *See* Mem. Supp. at 10; Pet'r's Reply at 4.

named in a one-count Superseding Indictment. Supers. Indictment, ECF No. 57. Count One charged Petitioner, and each of his co-defendants, with Use of a Firearm Resulting in Death, in violation of 18 U.S.C. §§ 924(c)(1) and (j), and 2. *Id.* On November 30, 2017, Petitioner pled not guilty. Arraign. Mins., ECF No. 83. On December 12, 2017, Petitioner's original counsel filed a motion to withdraw, which the Court granted. Mot. Withdraw, ECF No. 87; Order Grant'g Mot. Withdraw, ECF No. 88. In that same Order, the Court appointed Attorney Trey Kelleter as counsel for Petitioner. Order Grant'g Mot. Withdraw. On April 10, 2018, the Court commenced a six-day jury trial. Open Court Proceed'g Mins., ECF Nos. 109-12, 115, 118. On April 17, 2018, the jury returned a guilty verdict on Count One of the Superseding Indictment with respect to Petitioner. Jury Verdict, ECF No. 123.

According to the Presentence Investigation Report ("PSR"), prior to March 13, 2009, Petitioner and at least two others targeted and conducted surveillance on Louis Joseph ("Joseph") for the purposes of robbing him of drugs and/or money. Presentence Investigation Rep. ¶ 9, ECF No. 143 ("PSR"). Co-defendant Mark Wallace ("Wallace"), who had a reputation for successful home invasions and robberies, learned of the target on Joseph and conspired with Petitioner to conduct a home invasion. *Id.* Wallace recruited co-defendants Joseph Benson ("Benson") and Rosuan Kindell ("Kindell"), both of whom resided in Boston, Massachusetts, to help commit the home invasion. *Id.* Benson and Kindell arrived in Williamsburg, Virginia, by Greyhound bus on March 12, 2009, and were in telephone contact with Wallace. *Id.* at ¶ 10. Telephone records indicate Wallace was also in telephone contact with Petitioner on or about March 12, 2009, and March 13, 2009. *Id.*

On March 13, 2009, Petitioner utilized his Chevrolet Tahoe and arrived at Joseph's home in the mid-to-late morning hours. *Id.* at ¶ 11. Benson and Kindell entered the residence by kicking

2

in the door. *Id.* Joseph and his girlfriend's five-year-old son, J.W., were present in the home. *Id.* at ¶ 12. In an interview with law enforcement, J.W. stated he was playing video games in his room when he heard people talking in the living room. *Id.* He observed Joseph and two unknown Black males standing in the living room. *Id.* Joseph told J.W. to go back into the bedroom. *Id.* J.W. heard the individuals tell Joseph to shut up. *Id.* Joseph was shot and killed. *Id.* at ¶ 11. A white lawn chair with blood was found in the living room of Joseph's home. *Id.* at ¶ 13. According to Joseph's girlfriend, the white lawn chair was not in the living room when she left the home that morning. *Id.* A blood sample was taken from the chair and submitted to the Eastern Virginia Forensic Crime Laboratory, and was a positive match for Benson. *Id.* An autopsy report revealed Joseph suffered five to six gunshot wounds to his torso and thighs. *Id.* at ¶ 16. Joseph also suffered injuries all over his body, including abrasions to his lower lip, neck, right elbow, left knee, left shin and back of his left calf, a scalp laceration, and bruising above his left elbow. *Id.*

Also on March 13, 2009, Petitioner contacted an unindicted co-conspirator and indicated he had two firearms. *Id.* at ¶ 14. He identified one as a Smith and Wesson Ruger, the same type of weapons used to murder Joseph. *Id.* Two firearms were later recovered in New York, New York, and determined to match the casings and bullets recovered from the murder scene and Joseph's body. *Id.* at ¶ 15. Greyhound bus records indicated that Benson and Kindell returned to Boston on March 14, 2009. *Id.* at ¶ 17. On January 12, 2010, Benson was arrested and charged with murder, use of a firearm in a felony, and possession of a firearm by a felon. *Id.* at ¶ 18. On December 10, 2010, Benson's charges were nolle prossed in Newport News General District Court. *Id.*

On March 20, 2012, Wallace, who was in the custody of the Bureau of Prisons, called a task force agent and advised he wanted to cooperate in the Joseph murder. *Id.* at ¶ 20. He stated the murder was only supposed to be a burglary and asked for immunity. *Id.* On April 11, 2012,

Wallace told a task force agent that they used Petitioner's vehicle on the day of the murder. *Id.*

On July 11, 2017, case agents interviewed Confidential Informant #1 (CI #1), during which CI #1 advised them that Benson and Kindell were members of the street gang "Columbia Point Dawgs," the largest gang in Boston, Massachusetts. *Id.* at ¶ 23. After Benson was arrested in January 2010 for Joseph's murder, Kindell told CI #1 that he and Benson went to Virginia because they had a target for a drug robbery. *Id.* Kindell indicated that they went into the house and had a tussle with Joseph, and Benson shot him. *Id.* Kindell also advised CI #1 that he had a source of drugs in Virginia, and that he and Benson were traveling to Virginia to "hustle." *Id.* Benson also contacted CI #1 and asked for a firearm prior to Joseph's murder, but CI #1 advised he did not have a firearm for Benson. *Id.*

Petitioner was assessed a Criminal History Category of VI, Total Offense Level of 43, and had a recommended U.S. Sentencing Guidelines range of life in prison. PSR at ¶¶ 85-86. On July 19, 2018, the Court sentenced Petitioner to five hundred forty (540) months' imprisonment, followed by five years of supervised release. J., ECF No. 153. On July 26, 2018, Petitioner timely appealed to the United States Court of Appeals for the Fourth Circuit ("Fourth Circuit"). Notice Appeal, ECF No. 156. On April 24, 2020, the Fourth Circuit affirmed Petitioner's conviction and sentence. *United States v. Benson*, 957 F.3d 218 (4th Cir. 2020). Petitioner filed a petition for rehearing en banc, but the Fourth Circuit denied it. Order Deny'g Pet. Rehear'g En Banc, ECF no. 212. On November 3, 2020, Petitioner filed a petition for writ of certiorari to the United States Supreme Court. Pet. Writ Cert., ECF No. 228. On December 7, 2020, the Supreme Court denied cert. *Brown v. United States*, 141 S. Ct. 934 (2020).

On December 7, 2021, Petitioner timely filed the instant Motion through counsel, alleging six ineffective assistance of counsel claims and one actual innocence claim. Pet'r's Mot. On

4

February 25, 2022, Petitioner filed a memorandum in support. Mem. Supp. On May 18, 2022, the Government replied in opposition. Mem. Opp'n. On July 5, 2022, Petitioner replied. Pet'r's Reply.

## II.   LEGAL STANDARD

### A.  Section 2255

Section 2255 allows a federal prisoner "claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States . . . [to] move the court which imposed the sentence to vacate, set aside, or correct the sentence." 28 U.S.C. § 2255 (2008) (West). In a § 2255 motion, the petitioner bears the burden of proving his or her claim by a preponderance of the evidence. *See Miller v. United States*, 261 F.2d 546, 547 (4th Cir. 1958). Additionally, pro se filers are entitled to more liberal construction of their pleadings. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007).

When deciding a § 2255 motion, the Court must promptly grant a hearing "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255(b). Motions under § 2255 generally "will not be allowed to do service for an appeal." *Sunal v. Large*, 332 U.S. 174, 178–79 (1947). For this reason, issues already fully litigated on direct appeal may not be raised again under the guise of a collateral attack. *United States v. Dyess*, 730 F.3d 354, 360 (4th Cir. 2013). Issues that should have been raised on direct appeal are deemed waived, procedurally defaulted, and cannot be raised on a § 2255 motion. *United States v. Mikalajunas*, 186 F.3d 490, 492 (4th Cir. 1999).

However, an individual may raise a procedurally defaulted claim if he or she can show (1) "cause and actual prejudice resulting from the errors of which he complains" or (2) that "a miscarriage of justice would result from the refusal of the court to entertain the collateral attack. . . [meaning] the movant must show actual innocence by clear and convincing evidence." *Id.* at 492–

93. To demonstrate cause and prejudice, a petitioner must show "both (1) 'cause' excusing his double procedural default, and (2) 'actual prejudice' resulting from the errors of which he complains." *United States v. Frady*, 456 U.S. 152, 168 (1982). To show "actual prejudice," the errors must have "worked to [his or her] actual and substantial disadvantage, infecting [his or her] entire trial with error of constitutional dimensions." *Id.* at 170. Ineffective assistance of counsel claims should generally be raised in a collateral motion instead of on direct appeal and constitute sufficient cause to review a procedurally defaulted claim. *See Untied States v. Benton*, 523 F.3d 424, 435 (4th Cir. 2008); *Mikalajunas*, 186 F.3d at 493.

### B. Ineffective Assistance of Counsel Claim

A viable ineffective assistance of counsel claim arises when "counsel's conduct so undermined the proper functioning of the adversarial process that the trial did not result in a just outcome." *Strickland v. Washington*, 466 U.S. 668, 686 (1984). An ineffective assistance of counsel claim is properly raised on a 28 U.S.C. § 2255 motion in the district court rather than on direct appeal unless the record conclusively shows ineffective assistance. *United States v. Williams*, 977 F.2d 866, 871 (4th Cir. 1992). To prove a claim of ineffective assistance of counsel, a petitioner must make two showings.

First, a petitioner must show that counsel's performance was deficient. *Id.* at 687. Counsel's errors must have been so serious that he or she was not actually functioning as "counsel" as guaranteed by the Sixth Amendment. *Id.* To demonstrate deficient performance, a petitioner must show "that counsel's representation fell below an objective standard of reasonableness" under the prevailing norms of the legal community. *Id.* at 688. "Judicial scrutiny of counsel's performance must be highly deferential," so "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689.

That presumption is even greater when counsel's decisions represent strategic tactical decisions requiring "assessment and balancing of perceived benefits against perceived risks." *United States v. Terry*, 366 F.3d 312, 317 (4th Cir. 2004). A petitioner bears the burden of rebutting this presumption. *Strickland*, 466 U.S. at 689.

Second, a petitioner must show that the deficient performance prejudiced the defense. *Id.* at 687. In other words, counsel's errors must have been so serious that the petitioner was deprived of a fair trial with a reliable result. *Id.* To demonstrate prejudice, a petitioner must prove that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. The United States Supreme Court defines a reasonable probability as "a probability sufficient to undermine confidence in the outcome." *Id.* In short, "[a]n error by counsel, even if professionally unreasonable, does not warrant setting aside the judgement of a criminal proceeding if the error had no effect on the judgment." *Id.* at 691. If a petitioner cannot meet either component of the *Strickland* test, the ineffective-assistance claim will fail. *Id.* at 700. Therefore, the Court need not address both components of the test if petitioner makes an insufficient showing on one. *Id.* at 697.

## III.   DISCUSSION

Petitioner asserts six ineffective assistance of counsel claims and one actual innocence claim. *See* Pet'r's Mot. at 5-7. Specifically, Petitioner alleges that his counsel was ineffective by failing to: (1) seek a unanimity instruction; (2) investigate and put on evidence about the pinging of Petitioner's cell phone; (3) object to the Court's constructive amendment to the Superseding Indictment; (4) argue that the Government put on false testimony to the grand jury; (5) argue on direct appeal that there was insufficient evidence to support the conviction; and (6) move to recall the direct appeal mandate or seek remand from the Supreme Court to consider the effect of *United*

*States v. Taylor*, 978 F.3d 73 (4th Cir. 2020). *Id.* Seventh and finally, Petitioner claims that the Fourth Circuit's decision in *Taylor* renders him factually and legally innocent. *Id.* The Court addresses each in turn.[2]

## A. Failure to Seek Unanimity Instruction

Petitioner first argues that his trial counsel provided ineffective assistance by failing to seek a unanimity instruction. Pet'r's Mot. at 5; Mem. Supp. at 6-9. Plaintiff claims that the Superseding Indictment alleges a violation of 18 U.S.C. §§ 924(c)(1) and (j) and (2), with both Hobbs Act robbery and attempted Hobbs Act robbery, together, as the alleged predicate crimes of violence. *Id.* The Government disagrees with this characterization, arguing that Petitioner was only charged with robbery as the predicate offense; not attempted robbery as well. Mem. Opp'n at 6. The Court must first clarify the predicate offense before assessing whether Petitioner's counsel was ineffective for failing to act on such.

Count One, which charged Petitioner with Use of a Firearm Resulting in Death, alleged that, "[o]n or about March 13, 2009," Petitioner and his co-defendants "did unlawfully and knowingly use, carry, brandish, and discharge a firearm *during and in relation to a crime of violence* for which he may be prosecuted in a Court of the United States, *that is, Interference with Commerce by Robbery*." Supers. Indictment at 3 (emphasis added). Thus, the Superseding Indictment charged Petitioner with a violation of 18 U.S.C. § 924(c)(1) and (j), with the predicate offense or underlying crime of violence being "Interference with Commerce by Robbery, in violation of Title 18, United States Code, Section 1951(a)." *Id.*

---

[2] The Court rejects the Government's argument that Petitioner's claims are procedurally defaulted because each claim, in both form and substance, alleges ineffective assistance of counsel and actual innocence. Mem. Opp'n at 5-6. It is well established that both of these claims are cognizable and properly raised in a § 2255 motion rather than on direct appeal. *Williams*, 977 F.2d at 871; *Mikalajunas*, 186 F.3d at 492-93.

The General Allegations, which described the relevant conduct Petitioner and his co-defendants engaged in to commit the predicate offense, alleged violations of 18 U.S.C. §§ 1951(b)(1) and (b)(3). *Id.* at 2. Specifically, the Superseding Indictment alleges that, "[o]n or about March 13, 2009," Petitioner and his co-defendants:

> did knowingly and unlawfully obstruct, delay and affect, and attempt to obstruct, delay and affect commerce as that term is defined in Title 18, United States Code, Section 1951(b)(3), and the movement of articles and commodities in such commerce, by knowingly and willfully committing robbery, as that term is defined in Title 18, United States Code, Section 1951(b)(1), in that the defendants did unlawfully obtain and attempt to obtain marijuana from the person of Louis Joseph against his will and by means of actual and threatened force, violence and fear of injury, immediate and future, to his person, and did aid, abet and assist each other and others in the commission of the offense, in violation of Title 18, United States Code, Sections 1951(a) and 2.

*Id.* The Court finds that the Superseding Indictment's use of conjunctive language – alleging that Petitioner both "affect[ed], *and* attempted" to affect commerce, and "obtain[ed] *and* attempt[ed] to obtain marijuana" – settles that the predicate offense is a completed Hobbs Act robbery. The Court understands the allegations to indicate that Petitioner and his co-defendants were successful in their attempt to commit robbery, rendering it a completed robbery. *See United States v. Taylor*, 142 S. Ct. 2015, 2020 (2022) ("Under the portion of the Hobbs Act relevant here, to win a conviction for a *completed* robbery the government must show that the defendant engaged in the 'unlawful taking or obtaining of personal property from the person . . . of another, against his will, by means of actual or threatened force.'"). In other words, Count One alleged that the defendants tried and succeeded in committing a Hobbs Act robbery, not that they committed an attempted robbery and a completed robbery.

Petitioner's attempt to analogize his case to *Taylor* is unavailing because the language of that indictment is meaningfully different. In that case, Taylor pled guilty to Counts Five and Seven

of a second superseding indictment, which charged him with Conspiracy to Interfere with Commerce by Threats and Violence, in violation of 18 U.S.C. § 1951, and Use and Carry Firearm During and in Relation to a Felony Crime of Violence, in violation of 18 U.S.C. § 924(c). *United States v. Taylor*, No. 3:08-cr-326 (E.D. Va. Feb. 4, 2009) Second Supers. Indictment 3-4, ECF No. 17 ("Taylor Indictment"). Count Seven, which is analogous to the Count of which Petitioner was convicted, charged Taylor, in full:

> On or about August 14, 2003, in the Eastern District of Virginia, and elsewhere within the jurisdiction of the Court, the defendant, [Taylor], did knowingly and unlawfully use and carry a firearm during and in relation to a felony crime of violence, to wit: conspiracy to interfere with commerce by armed robbery as charged in Count Five and Interference with Commerce by Threats and Force as charged in Count Six. (In violation of Title 18, United States Code, Section 924(c)).

*Id.* Taylor therefore faced two predicate offenses underlying Count Seven: Counts Five and Six.

Although he only technically pled to the predicate conspiracy count, in pleading guilty to Count Seven, Taylor also admitted to the conduct alleged in Count Six, which provided, in part:

> On or about August 14, 2003, in the Eastern District of Virginia and within the jurisdiction of this Court, [Taylor], did knowingly and unlawfully obstruct, delay, and affect commerce by attempting robbery, and did aid and abet the same, to wit: by attempting and aiding and abetting another to attempt to rob at gun-point of an individual of United States Currency.

Taylor Indictment at 3. The critical difference between the language of the indictments is that, in Taylor's case, the grand jury did not allege that Taylor was successful in committing robbery; only that he attempted. In Petitioner's case, on the other hand, the allegations explicitly state that he and his co-defendants "did unlawfully obtain" marijuana from Louis Joseph. Supers. Indictment at 2. Thus, the Court finds that Petitioner was charged with the predicate offense of a completed Hobbs Act robbery, only. Moreover, the Fourth Circuit affirmed this on appeal. *See Benson*, 957 F.3d at

240 ("Here, the predicate offense for the § 924(c) 'crime of violence' was Hobbs Act robbery, in violation of 18 U.S.C. § 1951(a) . . . [which] constitutes a crime of violence under the force clause at § 924(c)(3)(A), *not* the residual clause at § 924(c)(3)(B)) (emphasis in original).

Turning to Petitioner's ineffective assistance of counsel claim, Petitioner argues that his counsel "was deficient for failing to request a unanimity instruction relative to whether the competed [*sic*] or attempted Hobbs Act robbery offense was committed." Pet'r's Mot. at 5. As just discussed, however, there was no need for counsel to request such because the Superseding Indictment alleges that Petitioner committed the predicate offense of a completed Hobbs Act robbery. Counsel also submitted an affidavit in response to Petitioner's Motion, in which he states that he "thoroughly reviewed all the proposed jury instructions in this matter and considered whether any others would be appropriate." Mem. Opp'n at Ex. 1, ¶ 3. He explains that he "concluded then, as [he] do[es] now, that a separate unanimity instruction was not appropriate under the law existing at that time." *Id.*

Petitioner's argument that the "charge to the jury specifically contemplated a finding of guilt based on attempted Hobbs Act robbery," even if true, would still not render counsel's actions deficient because Petitioner bases his claim on a case which had not yet been decided. Mem. Supp. at 7. Indeed, the Fourth Circuit decided *Taylor* over two years after a jury found Petitioner guilty. *See United States v. Taylor*, 979 F.3d 203 (4th Cir. 2020). Petitioner cannot hold counsel accountable for law that did not yet exist at the time of representation. *See United States v. Morris*, 917 F.3d 818, 823 (4th Cir. 2019) ("To avoid the distorting effects of hindsight, claims under *Strickland*'s performance prong are 'evaluated in light of the available authority at the time of counsel's allegedly deficient performance.'") (quoting *United States v. Carthorne*, 878 F.3d 458, 466 (4th Cir. 2017)). At the time of Petitioner's trial, therefore, counsel would have raised an

unsupported novel argument by requesting a unanimity instruction to clarify a legal distinction that did not yet exist, that is, that a completed but not an attempted Hobbs Act robbery constitutes a crime of violence. *Id.* ("A lawyer does not perform deficiently by failing to raise novel arguments that are unsupported by then-existing precedent. Nor does counsel fall below *Strickland*'s standard of reasonableness by failing to anticipate changes in the law, or to argue for an extension of precedent.") (internal citations omitted). Thus, the Court cannot conclude that counsel's failure to request a unanimity instruction was unreasonable "under prevailing professional norms." *Strickland*, 466 U.S. at 688.

Even if counsel's actions were unreasonable, Petitioner fails to demonstrate that he was prejudiced. First, in light of the existing law at the time, the Court finds that there is no reasonable probability that the outcome would have been different had counsel requested such an instruction. *Strickland*, 466 U.S. at 694. Second, "[t]he district court has considerable discretion in choosing the specific wording of instructions." *United States v. Piche*, 981 F.2d 706, 712 (4th Cir. 1992); *accord Figg v. Schroeder*, 312 F.3d 625, 640 (4th Cir. 2002). Therefore, the jury instructions must be "taken as a whole and in the context of the entire charge" to determine whether "the instructions accurately and fairly state the controlling law." *United States v. Rahman*, 83 F.3d 89, 92 (4th Cir. 1996). In relying solely on a single jury instruction and the fact that he had a general verdict, Petitioner ignores the language of the Superseding Indictment and the jury instructions as a whole.

Moreover, the two cases on which Petitioner relies do not bolster his claim for the same reason that *Taylor* is inapposite: Petitioner was charged with the predicate offense of a completed Hobbs Act robbery, not attempted, and the jury instructions as a whole did not permit the jury to convict Petitioner of an attempted Hobbs Act robbery. *See United States v. Berry*, No. 3:09cr19, 2020 WL 591569, at *3 (W.D. Va. Feb. 6, 2020) ("[T]he jury instructions allowed for a conviction

12

on either conspiracy or attempted Hobbs Act robbery."); *In re Gomez*, 830 F.3d 1225, 1228 (11th Cir. 2016) ("The way Gomez's *indictment* is written, we can only guess which predicate the jury relied on.") (emphasis added). Indeed, Petitioner's case does not even implicate the same primary concern as that in *Taylor* because he was charged with and convicted of a single felony, meaning he did not face the mandatory consecutive sentences that ordinarily accompany violations of 18 U.S.C. § 924(c). *See* J. at 1-2; *Taylor*, 142 S. Ct. at 2018-19 ("[Whether] Hobbs Act robbery qualif[ies] as a 'crime of violence' under 18 U.S.C. § 924(c)(3)(A) . . . matters because a person convicted of attempted Hobbs Act robbery alone normally faces up to 20 years in prison. But if that offense qualifies as a 'crime of violence' under § 924(c)(3)(A), the same individual may face a second felony conviction and years or decades of further imprisonment."). Thus, the Court finds that counsel's performance was not deficient and, even if it were, there is no reasonable probability that outcome would have been different. *Strickland*, 466 U.S. at 687-94.

Accordingly, with respect to Ground One, Petitioner's Motion is **DENIED**.

## B. Failure to Investigate & Present Evidence on Cell Phone Pinging

Second, Petitioner claims that his trial counsel provided ineffective assistance by failing to investigate and put on evidence about the pinging of his cell phone. Pet'r's Mot. at 5; Mem. Supp. at 10. He contends that the discovery from the Government that counsel received included "a series of email exchanges between the case agent and a cell site technician about the location of the defendants at the time of the murder." Pet'r's Mot. at 5. Petitioner argues that because "[n]owhere in any of these exchanges did the case agent or the cell site technician discuss whether Brown's phone had 'pinged' him at the location of the murder," counsel should have investigated further. *Id.* If counsel had done so, Petitioner hypothesizes that, "upon information and belief," "counsel

would have discovered that the [G]overnment had cell site location data which showed that Brown was not at the scene of the crime." *Id.*

The Fourth Circuit has held that, "[a]lthough counsel should conduct a reasonable investigation into potential defenses, *Strickland* does not impose a constitutional requirement that counsel uncover every scrap of evidence that could conceivably help their client." *Green v. French*, 143 F.3d 865, 892 (4th Cir. 1998), *abrogated on other grounds by Williams v. Taylor*, 529 U.S. 362 (2000). Rather, "all that *Strickland* requires" is that counsel conduct "an appropriate investigation." *United States v. Dyess*, 730 F.3d 354, 362 (4th Cir. 2013). Here, Petitioner contends that his counsel was ineffective for not investigating further into existing evidence that, he theorizes, could have revealed potential exculpatory evidence. *See* Pet'r's Mot. at 5 ("Had this information been obtained, it would have been powerful before the jury, creating a reasonable probability that the jury would have acquitted instead of convicting Brown."). Counsel responds that he "believe[s] this asserted factual predicate is not accurate" and that he is "not aware of any such evidence in the record or received in discovery that affirmatively shows that Mr. Brown 'was not at the scene of the crime.'" Mem. Opp'n at Ex. 1, at ¶ 4.

To the extent Petitioner "is arguing inferences from the known data," counsel contends "it is simply the same argument that [he] made at trial." *Id.* at ¶ 5. The record reflects that, at trial, counsel extensively cross-examined the Government's expert, Paul Swartz, who testified at length regarding the telephone records made available to counsel during discovery. *See* Trial Tr. 510:12-525:13, ECF No. 189. Counsel emphasized on cross-examination that Mr. Swartz's analysis of the phone records revealed that Petitioner had never contacted co-defendants Benson or Kindell, only co-defendant Wallace. *Id.* at 510:25-511:13. As for Petitioner's contact with Wallace on March 13, 2009, counsel also emphasized that Wallace called multiple other people that day and in the

14

same time frame, and that the three calls between Petitioner and Wallace that morning would likely indicate that they were not in the same location when the calls occurred. *Id.* at 517:25-520:14. Finally, counsel discussed the significance of the evidence that Wallace's phone, not Petitioner's phone, moved to an area where it pinged off of the same cell phone tower as the one that covers the location of Louis Joseph's house. *Id.* at 521:12-522:01. Specifically, counsel highlighted that the evidence pertained to "Mr. Wallace's phone, not Mr. Brown's phone," to which Mr. Swartz replied, "[t]hat's correct." *Id.* at 521:24-522:01. The record therefore demonstrates that counsel used the specific pinging evidence, which did not show that Petitioner's phone had pinged him on the day of the murder, to make the very inference that Petitioner was not present at the scene.

Further, Petitioner's implicit claim that the Government violated its obligation under *Brady v. Maryland*, 373 U.S. 83 (1963), by failing to produce exculpatory evidence, without a scintilla of evidence in support, falls far below the burden he bears when making such an allegation. *United States v. Higgs*, 663 F.3d 726, 735 (4th Cir. 2011) ("To prevail on a *Brady* claim, the defendant must demonstrate (1) that the evidence is favorable, either because it is exculpatory or impeaching; (2) that the government suppressed the evidence; and (3) that the evidence was material to the defense."). The Government explicitly states in response that it "fully complied with its discovery obligations by providing all available phone and cell cite [*sic*] data to defense counsel prior to trial." Mem. Opp'n at 10. It also explains that "[t]here was no cell site evidence establishing the location of Brown's cell phone on the day of the murder as no such data existed at the time it was requested." *Id.* Without any evidence beyond Petitioner's own "belief" that the Government possessed this evidence, the Court cannot find that the Government violated its *Brady* obligation, nor that counsel demonstrated deficient performance by failing to investigate hypothetical exculpatory evidence. *Strickland*, 466 U.S. at 688. Moreover, without any indicia that this evidence

exists, counsel's failure to investigate it does not create "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694.

In sum, the Court cannot find that counsel's failure to investigate Petitioner's post-conviction hunch is unreasonable such that he did not conduct an "appropriate investigation," *Dyess*, 730 F.3d at 362, especially when Petitioner fails to produce nor refer to any concrete exculpatory documentation to support his hypothesis, nor that he suffered any prejudice as a result. *Strickland*, 466 U.S. at 688, 694. Moreover, the Court finds it unnecessary to hold an evidentiary hearing on this issue because it finds that Petitioner has alleged a frivolous habeas allegation without any support or indicia of reliability that warrants further investigation. *See United States v. White*, 366 F.3d 291, 297 (4th Cir. 2004) ("[I]f the parties produce evidence disputing material facts with respect to non-frivolous habeas allegations, a court must hold an evidentiary hearing to resolve those disputes."); *see also Raines v. United States*, 423 F.2d 526, 530 (4th Cir. 1970) ("Whether such a hearing may be necessary, and whether petitioner's presence is required, is best left to the common sense and sound discretion of the district judges.").

Accordingly, with respect to Ground Two, Petitioner's Motion is **DENIED**.

## C. Failure to Object to Constructive Amendment

Third, Petitioner claims that counsel was ineffective for failing to object to the Court's charge to the jury that it could find Petitioner guilty if the Government proved that he obtained either marijuana or U.S. currency. Pet'r's Mot. at 5. Petitioner argues that, because the Superseding Indictment only mentions marijuana, this charge to the jury constitutes a constructive amendment to Count One. *Id.* Counsel responds that he "did not believe at that time that a fatal variance existed between the indictment and the instructions." Mem. Opp'n at Ex. 1, at 6.

16

The Fifth Amendment "guarantees that a criminal defendant will be tried only on charges in a grand jury indictment," meaning "only the grand jury may broaden or alter the charges in the indictment." *United States v. Randall*, 171 F.3d 195, 203 (4th Cir. 1999) (cleaned up). "If the district court, through its instructions 'broadens the bases of conviction beyond those charged in the indictment, a constructive amendment—sometimes referred to as a fatal variance—occurs.'" *United States v. Banks*, 29 F.4th 168, 174 (4th Cir. 2022) (quoting *Randall*, 171 F.3d at 203). However, not every variance is fatal. *United States v. Allmendinger*, 706 F.3d 330, 339 (4th Cir. 2013). Indeed, a constructive amendment occurs "when the indictment is effectively altered 'to change the elements of the offense charged, such that the defendant is actually convicted of a crime other than that charged in the indictment.'" *United States v. Burfoot*, 899 F.3d 326, 338 (4th Cir. 2018) (quoting *Randall*, 171 F.3d at 203). On the other hand, "[w]hen the government's proof diverges to some degree from the indictment but does not change the crime charged in the indictment, a mere variance occurs." *Allmendinger*, 706 F.3d at 339. When the variance is only "mere," it "does not violate a defendant's constitutional rights unless it prejudices the defendant either by surprising him at trial and hindering the preparation of his defense, or by exposing him to the danger of a second prosecution for the same offense." *Randall*, 171 F.3d at 203.

The Court finds that counsel was not ineffective for several reasons. First, because the jury instructions only varied in the *kind* of property that defendants obtained, that is, marijuana or U.S. currency rather than marijuana, they only broadened the means by which the defendants allegedly acted, not the elements of the offense they committed. *See Richardson v. United States*, 526 U.S. 813, 817 (1999) ("[A] federal jury need not always decide unanimously which of several possible sets of underlying brute facts make up a particular element, say, which of several possible means the defendant used to commit an element of the crime."). In other words, the instructions do not

constitute a constructive amendment because they did not "change the elements of the offense charged," such that Petitioner was convicted of a different crime than that charged in the Superseding Indictment. *Burfoot*, 899 F.3d at 338. Any objection on this basis would therefore have been without merit and unsupported by law. *See Morris*, 917 F.3d at 823.

Second, the record reflects that the evidence at trial, that was available to counsel in discovery, indicated that Louis Joseph was known to sell drugs and have large sums of money, both of which were found inside his home. Mem. Opp'n at 13. The Superseding Indictment itself states that "[d]rug trafficking is an inherently economic enterprise that affects interstate commerce." Supers. Indictment at 2. Indeed, the nature of the predicate offense requires the Government to prove that interstate commerce was affected. Thus, Petitioner cannot claim that this mere variance alleging that he and his co-defendants obtained money during the robbery could have "surprise[ed] him at trial and hinder[ed] the preparation of his defense." *Randall*, 171 F.3d at 203. The Court therefore finds that counsel's performance was not deficient, and Petitioner fails to allege, let alone demonstrate, that he was prejudiced even if any deficiency did exist. *Strickland*, 466 U.S. at 688, 694.

Accordingly, with respect to Ground Three, Petitioner's Motion is **DENIED**.

**D. Failure to Argue that the Government Put on False Testimony to Grand Jury**

Fourth, Petitioner claims that "[t]he Government's case agent was untruthful before the grand jury when she testified that she had corroborated statements by cooperating witnesses." Pet'r's Mot. at 6. Petitioner argues that counsel was aware of this and therefore should have sought dismissal of the charges against Petitioner. *Id.* As with his claim that the Government violated its *Brady* obligation, Petitioner fails to substantiate this allegation with even a scintilla of evidence.[3]

---

[3] *See* discussion *supra* Section III.B.

Counsel responds that Petitioner's "claim on its face is predicated on a generalized, unsubstantiated factual predicate that [he] do[es] not believe is true." Mem. Opp'n at Ex. 1, at ¶ 7. Petitioner completely fails to respond to both counsel's and the Government's assertions that this claim is patently false. *Compare* Mem. Opp'n at 14-16, Ex. 1, *with* Pet'r's Reply. The Court therefore finds this unsubstantiated, conclusory allegation to be frivolous and without merit. *See White*, 366 F.3d at 297; *see also Terry*, 366 F.3d at 316 ("[C]onclusory allegations are insufficient to establish the requisite prejudice under *Strickland*."); *Umar v. United States*, 161 F. Supp. 3d 366, 375 (E.D. Va.), *dismissed*, 613 F. App'x 238 (4th Cir. 2015) ("Unsubstantiated and largely conclusory statements are insufficient to carry a petitioner's burden as to the two prongs of this test articulated in *Strickland*.") (cleaned up).

Accordingly, with respect to Ground Four, Petitioner's Motion is **DENIED**.

### E. Failure to Argue Insufficient Evidence on Direct Appeal

Fifth, Petitioner argues counsel was ineffective by not arguing on appeal that there was insufficient evidence to support the conviction. Pet'r's Mot. at 6. He argues that "[t]he only evidence truly linking Brown to the crime was testimony from a solitary cooperating witness." *Id.* "Th[e] right to effective assistance of counsel extends to require such assistance on direct appeal of a criminal conviction." *Bell v. Jarvis*, 236 F.3d 149, 164 (4th Cir. 2000) (en banc) (applying *Strickland* to claims of ineffective assistance of counsel during appellate proceedings). "In deciding which issues to raise on appeal, [counsel] is entitled to the presumption that he decided which issues were most likely to afford relief." *Pruett v. Thompson*, 996 F.2d 1560, 1568 (4th Cir. 1993). "Effective assistance of appellate counsel does not require the presentation of all issues on appeal that may have merit." *Lawrence v. Branker*, 517 F.3d 700, 709 (4th Cir. 2008). Indeed, the "process of winnowing out weaker arguments on appeal and focusing on those more likely to

prevail, far from being evidence of incompetence, is the hallmark of effective appellate advocacy." *Smith v. Murray*, 477 U.S. 527, 536 (1986) (internal quotations and citations omitted). "Generally, only when ignored issues are clearly stronger than those presented, will the presumption of effective assistance of counsel be overcome." *Gray v. Greer*, 800 F.2d 644, 646 (7th Cir. 1986), *cited with approval in Smith v. Robbins*, 528 U.S. 259, 288 (2000).

This inquiry "therefore requires a court to compare the strength of an issue not raised on direct appeal . . . with the strength of arguments that were raised." *United States v. Allmendinger*, 894 F.3d 121, 126 (4th Cir. 2018). In conducting that comparison, the court "focus[es] on the reasonableness of appellate counsel's conduct viewed as of the time of the conduct." *Id.* (citing *Strickland*, 466 U.S. at 690). Here, on appeal, counsel challenged the Court's admission of Petitioner's co-defendants' out-of-court statements by Detective Kempf and Turner under the rule in *Bruton v. United States*, 391 U.S. 123 (1968). *Benson*, 957 F.3d at 228-33. Counsel for all three convicted defendants raised this issue on appeal, challenging different testimony admitted throughout the trial. *Id.* at 228. Although the Fourth Circuit ultimately concluded that *Bruton* was not implicated, it engaged in an extensive analysis to arrive at such. *Id.* at 228-34. Indeed, the Fourth Circuit's opinion analyzed this issue most thoroughly of all of the issues raised on appeal. *Id.* In addressing counsel's specific challenge to Detective Kempf's testimony, the Fourth Circuit concluded that, "[a]lthough it is a close question, we agree that the statement did not present a *Bruton* issue because it was not facially incriminating as to Brown." *Id.* at 231.

Moreover, counsel responded to Petitioner's challenge by contending that he "thoroughly reviewed possible appealable issues and directly considered whether a sufficiency argument had any merit and concluded that it did not" because "[t]he admissible evidence included a witness who testified that Mr. Brown confessed to him." Mem. Opp'n at Ex. 1, at ¶ 9. Since counsel was

"well aware that the evidence on appeal must be viewed in the light most favorable to the prevailing party," he found "there was no reasonable basis for believing that the Fourth Circuit would look past an alleged confession on a sufficiency review." *Id.*

As counsel himself anticipated, when addressing whether any such *Bruton* error was harmless, the Fourth Circuit found Petitioner's confession quickly resolved that question. In finding that "even if we were to assume a *Bruton* error here, it would be harmless," the Fourth Circuit relied primarily on Petitioner's confession:

> Brown himself admitted to Douglas that he owned the truck used to transport the Defendants to Joseph's house; that he helped to plan the crime; and that he was present when the other participants kicked the front door in (a description corroborated by crime scene investigators). Brown's own statements thus subsumed Wallace's passing reference to his truck by supplying far more incriminating information. And the Government presented additional evidence that Brown armed and transported his codefendants—including his wiretap statement that he owned one of the firearms used to kill Joseph and his sale of the weapon—and his repeated communications with Wallace (the chief organizer) directly before and after the murder.

*Benson*, 957 F.3d at 232. Thus, although counsel did not raise a sufficiency challenge, the Fourth Circuit's own opinion indicates that it found counsel's *Bruton* challenge to have more merit. Further, the opinion elucidates that Petitioner is incorrect in asserting that Douglas's testimony was "[t]he only evidence truly linking Brown to the crime." Pet'r's Mot. at 6. Rather, as the Government and the Fourth Circuit summarize, "the Government presented additional evidence" linking Petitioner to the crime, including wiretap statements, communications with co-defendant Wallace, evidence that his vehicle was used in the commission of the crime, an investigation into the murder weapons determined to have been used to kill Louis Joseph, and other evidence derived from Petitioner's cell phone. *See* Mem. Opp'n at 17-18. As the Fourth Circuit repeated in its

opinion, "the Government presented substantial evidence of the involvement of both Brown and Wallace in the offense, including their own admissions." *Benson*, 957 F.3d at 233.

The Court therefore finds that it was reasonable at the time for counsel to find that raising a sufficiency issue on appeal would be futile, *Allmendinger*, 894 F.3d at 126, and that this issue was not "clearly stronger" than the issue counsel presented on appeal. *Gray*, 800 F.2d at 646. Moreover, as the Fourth Circuit's own opinion indicates, there is no reasonable probability that the appeal would have reached a different outcome had counsel presented the sufficiency issue. *Strickland*, 466 U.S. at 694.

Accordingly, with respect to Ground Five, Petitioner's Motion is **DENIED**.

### F.  Failure to Move to Recall Mandate or Seek Remand from Supreme Court

Sixth, Petitioner argues counsel was ineffective for failing to move to recall the mandate of the Fourth Circuit or seek a remand from the Supreme Court in order for the Fourth Circuit to consider how its decision in *Taylor* affected Petitioner's case. Pet'r's Mot. at 6. Petitioner's claim rests on his understanding that "*Taylor* directly impacts the validity of [his] conviction." Mem. Supp. at 16. Although counsel states that he "did not consider this issue at the time," the Court finds that this decision was neither ineffective nor prejudicial because, as previously discussed, the Fourth Circuit's and the Supreme Court's decisions in *Taylor* did not and do not implicate Petitioner's case.[4] Mem. Opp'n at Ex. 1, at ¶ 9. The Court therefore finds that, even if counsel had filed these motions, there is no reasonable probability that the Fourth Circuit would have granted it and vacated Petitioner's conviction. *Strickland*, 466 U.S. at 694.

Accordingly, with respect to Ground Six, Petitioner's Motion is **DENIED**.

---

[4] *See* discussion *supra* Section III.A.

### G. Actual Innocence

Seventh and finally, Petitioner argues that *"Taylor* renders [him] factually and legally innocent." Pet'r's Mot. at 7. Petitioner relies on his briefing "in the context of Ground One and Ground Six," which the Court has already found to be without merit.[5] Mem. Supp. at 16. The Supreme Court recognizes a limited "actual innocence" exception to certain procedural bars to habeas review. The exception applies "in an extraordinary case, where a constitutional violation has probably resulted in the conviction of one who is actually innocent" and allows the court to "grant the writ [of habeas corpus] even in the absence of a showing of cause for the procedural default." *Murray v. Carrier*, 477 U.S. 478, 496 (1986). Although "actual innocence, if proved, serves as a gateway through which a petitioner may pass whether the impediment is a procedural bar . . . or . . . expiration of the statute of limitations . . . tenable actual-innocence gateway pleas are rare." *McQuiggin v. Perkins*, 569 U.S. 383, 386 (2013). Indeed, "a petitioner does not meet the threshold requirement unless he persuades the district court that, in light of [] new evidence, no juror, acting reasonably, would have voted to find him guilty beyond a reasonable doubt." *Schlup v. Delo*, 513 U.S. 298, 329 (1995).

Petitioner's claim fails because he does not offer any new evidence whatsoever. *Id.* at 324 ("To be credible, such a claim requires petitioner to support his allegations of constitutional error with new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial."). Rather, his claim of legal innocence in light of *Taylor* is both inapplicable and incorrect.

Accordingly, with respect to Ground Seven, Petitioner's Motion is **DENIED**.

---

[5] *See* discussion *supra* Sections III.A, III.F.

## IV.   CONCLUSION

For the reasons stated above, Petitioner's § 2255 Motion is **DENIED**.

This Court may issue a certificate of appealability only if the applicant has made a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c); Fed. R. App. P. 22(b)(1). This means that Petitioner must demonstrate that "reasonable jurists could debate whether . . . the petition should have been resolved in a different manner or that the issues presented were 'adequate to deserve encouragement to proceed further.'" *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (quoting *Barefoot v. Estelle*, 463 U.S. 880, 893, n.4 (1983)); *see United States v. Swaby*, 855 F.3d 233, 239 (4th Cir. 2017). Petitioner's claims are based upon incorrect interpretations of judicial precedent. As such, Petitioner fails to demonstrate a substantial showing of a denial of a constitutional right, and a Certificate of Appealability is **DENIED**.

In addition, the Court **ADVISES** Petitioner that he may appeal from this final Order by forwarding a written notice of appeal to the Clerk of the United States District Court, United States Courthouse, 600 Granby Street, Norfolk, Virginia 23510. The Clerk must receive this written notice within sixty (60) days from this Order's date. The Court **DIRECTS** the Clerk to provide a copy of this Order to all Parties.

**IT IS SO ORDERED.**

Raymond A. Jackson
United States District Judge

Newport News, Virginia
August 31, 2022

UNITED STATES DISTRICT JUDGE